Ashley L. Shively (SBN 264912)
HOLLAND & KNIGHT LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Telephone: (415) 743-6900
Facsimile:  (415) 743-6910
Email: ashley.shively@hklaw.com

Stephen P. Warren (*Pro Hac Vice forthcoming*)
Florida Bar No. 788171
HOLLAND & KNIGHT LLP
701 Brickell Ave., Suite 3300
Miami, FL  33131
Tel:    (305) 374-8500
Email: stephen.warren@hklaw.com

Michael M. Gropper (*Pro Hac Vice forthcoming*)
Florida Bar No. 105959
HOLLAND & KNIGHT LLP
50 North Laura Street, Suite 3900
Jacksonville, FL 32202
Tel:    (904) 798-7326
Email: michael.gropper@hklaw.com

Attorneys for Plaintiff DENIS GROSZ

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DENIS GROSZ, an individual, | Case No.: _____ |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF** |
| vs. | |
| TOPTAL, LLC, a Delaware limited liability company, and TASO DU VAL, an individual, | **[JURY TRIAL DEMANDED]** |
| Defendants. | |

Plaintiff, Denis Grosz ("Grosz"), by and through his undersigned attorneys, commences this action against Toptal, LLC and Taso Du Val ("Du Val") (collectively, "Defendants") for damages, injunctive relief, and declaratory relief, and alleges as follows:

## INTRODUCTION

1. Toptal, LLC ("Toptal") is a service that connects companies with freelance software engineers around the world and has built its success, in significant part, on the backs of investors who invested in Toptal with the reasonable expectation that their investment would ultimately entitle them to equity in Toptal. Toptal represents to investors, among other things, if "you give us capital, we give you equity, that's it." These representations and others like them are designed to lure investors into investing money in Toptal when Toptal has no intention of actually providing investors with equity in Toptal.

2. Denis Grosz is one such investor. Grosz previously founded a very successful start-up company, has invested in numerous high-growth startup companies, and advises companies on marketing, strategy, and growth techniques. He has a reputation for adding much more value to a startup company than a typical investor because of the unique advisory services he provides to companies he invests in, which was true for Toptal as well.

3. In 2012, Grosz invested $1,000,000 in "seed financing" in Toptal when it was a startup company to help Toptal grow its business. Toptal (and, in particular, its Chief Executive Officer, Du Val) promised Grosz that his investment would eventually entitle him to own approximately 10% of the equity of Toptal. In connection with Grosz's investment, Toptal executed a Note Purchase Agreement ("NPA") and a Convertible Promissory Note ("Note"), which provided that Grosz's investment would convert into equity of Toptal upon the occurrence of either one of two events: (a) if Toptal raised additional financing through a "Next Equity Financing," as that term is defined in the NPA, or (b) upon Grosz's written demand to Toptal at any time after April 30, 2014. If either of these events occurred, Toptal was obligated to convert from a Delaware limited liability company to a Delaware C-corporation in order to facilitate the conversion to equity. Thus, after April 30, 2014, Grosz retained the sole and unilateral right to convert his Note into equity in Toptal upon written demand, and upon receipt of such demand Toptal was required to convert to a C-corporation.

- 1 -   Case No. _____
COMPLAINT FOR DAMAGES AND
INJUNCTIVE AND DECLARATORY RELIEF

4. Representatives of Toptal, including its Chief Executive Officer, Du Val, repeatedly assured Grosz when Grosz invested in the Note that Toptal would imminently convert from a Delaware limited liability company to a Delaware C-corporation. Toptal has never converted from a Delaware limited liability company to a Delaware C-corporation, despite Toptal's and Du Val's repeated statements since 2012 that such conversion to a C-corporation would soon occur to effectuate the conversion of the Note into equity in Toptal.

5. In order to protect Grosz's right to convert his investment into equity, the Note expressly prohibits Toptal from paying the principal and accrued interest on the Note absent Grosz's demand or consent. Grosz has never demanded or consented to Toptal's payment of the Note. Instead, Grosz seeks to convert his Note into equity in Toptal pursuant to his conversion rights in the Note and NPA.

6. In addition to the NPA and Note, Toptal and Grosz entered into an Advisor Agreement wherein Grosz agreed to consult, work with, and advise Toptal on limited matters related to Toptal's growth strategy. In return, Grosz received the opportunity to obtain an additional 1.5% equity in Toptal, which fully vested pursuant to the terms and conditions of the Advisor Agreement.

7. It now appears that Toptal never intended to provide Grosz (or other investors) with equity in Toptal or otherwise comply with its obligations under NPA, Note, or Advisor Agreement.

8. On March 26, 2020, Toptal sent a letter, through counsel, to Grosz advising him that "Toptal has concluded that this is the appropriate time to terminate its relationship with [Grosz] under the parties' [NPA]." Despite having no right to do so, Toptal demanded that Grosz provide Toptal with wire instructions by the next business day and indicated that "Toptal has prepared a wire transfer to [Grosz] in the amount of $1,335,936.90, which represents the principal amount of [Grosz's] $1 million loan to Toptal and accrued 4.0% per annum interest." In other words, Toptal impermissibly sought to strip Grosz of his rights to convert his investment into equity of Toptal by unilaterally forcing the repayment of the principal and accrued interest on the Note without Grosz's consent in violation of the terms of the Note.

9. In that regard, Toptal has breached the Note and NPA, which expressly prohibit Toptal from paying the Note absent Grosz's demand or consent to such payment. Grosz has never demanded

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: (415) 743-6900
Fax: (415) 743-6910

or consented to payment by Toptal of the Note.

10. In Toptal's March 26, 2020 letter, Toptal also falsely accused Grosz of breaching his Advisor Agreement by encouraging or soliciting employees or consultants of Toptal to leave Toptal and by utilizing Toptal's proprietary information. Toptal's claims are meritless, untrue, and designed merely as a distraction to deprive Grosz of his right to equity in Toptal.

11. Grosz brings this action to remedy Toptal's breaches of the NPA, Note, and Advisor Agreement and its illegal efforts to deprive Grosz of his rights to equity in Toptal.

## **THE PARTIES, JURISDICTION, AND VENUE**

12. Grosz is an adult individual and a citizen of the state of Nevada for purposes of diversity jurisdiction.

13. Du Val is an adult individual and citizen of the state of New York for purposes of diversity jurisdiction.

14. Toptal is a Delaware limited liability company that resides, has a location at, and instructs the public to contact it at 548 Market Street, Suite 36879, San Francisco, California 94104. Toptal has a single member, Du Val, who is a citizen of the state of New York. As such, Toptal is a citizen of the state of New York for purposes of diversity jurisdiction.

15. This Court has original jurisdiction over the claims set forth in this Complaint pursuant to 28 U.S.C. § 1332. Specifically, there is complete diversity between the parties in this case as Grosz is a citizen of the state of Nevada, Du Val is a citizen of the state of New York, and Toptal is a citizen of the state of New York. The amount in controversy in this action exceeds the sum or value of $75,000, exclusive of interest, costs, and attorneys' fees.

16. Venue is proper under 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

17. This Court has personal jurisdiction over Toptal and Du Val. Toptal resides within this judicial district and has a registered address in San Francisco. In addition, Toptal is doing business in California. Moreover, in their dealings, Grosz, Du Val, and Toptal purposefully availed themselves of the state of California because, among other things, the contracts at issue in this Complaint are expressly governed by California law. Toptal and Du Val otherwise have minimum

contacts with, and purposefully availed themselves of, the state of California. For example only and not limitation:

      a. Du Val met with Grosz on two separate occasions in California to negotiate the contracts at issue in this Complaint;

      b. Du Val directed Grosz to wire his investment to a Toptal bank account in California;

      c. The bank to which Grosz wired his investment was located in California; and

      d. At the time that the contracts at issue in this Complaint were negotiated, Toptal was utilizing an address in California, which is believed to be an address utilized by Du Val.

18. Pursuant to Civil Local Rule 3-2(c), this action arises within the County of San Francisco, wherein occurred a substantial part of the events which give rise to Grosz's claims.

## GENERAL ALLEGATIONS

19. Toptal was founded in 2010 and soon began efforts to seek investors by promising them equity in the company if Toptal ultimately succeeded and raised more financing and converted from a limited liability company to a C-corporation. From its inception through today, all of Toptal's equity has been owned by a single member—Du Val.

20. Upon information and belief, the valuation of Toptal is more than $1,000,000,000. However, Grosz needs to conduct discovery to ascertain the actual valuation because Toptal has not shared financial statements or any other company records with Grosz that would enable him to ascertain or better estimate the valuation of Toptal. For comparison, Upwork, Inc. ("Upwork") is a publicly-traded company that provides services comparable to Toptal. As of April 1, 2020, Upwork's market capitalization was approximately $682,000,000; however, on January 1, 2020 (*i.e.*, before the 2020 stock market crash because of the outbreak of COVID-19), the market capitalization of Upwork was approximately $1,200,000,000.

### Grosz Invests $1 Million in Toptal

21. Grosz was the last investor in an initial round of "seed financing" for Toptal. Grosz invested $1,000,000 in Toptal by purchasing the Note, which, coupled with Grosz's rights under the Advisor Agreement, were intended to result in Grosz owning approximately 10% of Toptal's equity

on a fully diluted basis upon either (i) the consummation of a "Next Equity Financing" (as defined in the NPA) or (ii) Grosz's election to exercise his "Optional Conversion" right any time after April 30, 2014, and Toptal's required conversion from a Delaware limited liability company to a Delaware C-corporation following either of those events.

22. On or about November 14, 2012, Toptal executed the NPA. In consideration for his investment, and pursuant to the terms of the NPA, Toptal issued to Grosz the Note in the principal amount of $1,000,000, which bore interest at 4% per annum.

23. Pursuant to the NPA, the Note is convertible into equity in Toptal pursuant to Section 2.2 of the NPA. Section 2.2 provides two mechanisms for the Note to convert to equity of Toptal: one of them to occur automatically, and the other at Grosz's election.

24. First, Section 2.2(a) of the NPA provides that the Note will convert to equity of Toptal upon a "Next Equity Financing," as follows:

> (a) <u>Next Equity Financing</u>. The principal and unpaid accrued interest of the Note will be automatically converted into Conversion Shares upon the closing of the Next Equity Financing. Notwithstanding the foregoing, accrued interest on this Note may be paid in cash at the option of the Company. The number of Conversion Shares to be issued upon such conversion shall be equal to the quotient obtained by dividing the outstanding principal and unpaid accrued interest on the Note to be converted, or portion thereof, on the date of conversion, by the Conversion Price. The issuance of Conversion Shares pursuant to the conversion of the Note shall be upon and subject to the same terms and conditions applicable to the Equity Securities sold in the Next Equity Financing.

25. The second mechanism by which the Note can convert to equity in Toptal is an exercise by Grosz of his "Optional Conversion" right under Section 2.2(b):

> (b) <u>Optional Conversion</u>. At any time on or after the fifteenth (15th) day prior to the Maturity Date, if the Next Equity Financing has not occurred by that time, the Note, at Lender's election by written notice to the Company, will be converted into Common Stock of the Company such that the Lender receives shares constituting 8.333% of the Fully-Diluted Equity Securities of the Company following such conversion.

26. In other words, under Section 2.2(b) of the NPA, if Toptal did not complete a "Next Equity Financing" by 15 days prior to the Maturity Date of the Note (which Maturity Date was May 14, 2014), Grosz had the sole, unilateral, and unfettered right to demand, by written notice to Toptal,

that his investment be converted into equity in Toptal. This provision was designed to ensure that Grosz always retained the right to convert his Note into equity in Toptal, even if Toptal did not raise additional financing through a "Next Equity Financing." In other words, the two conversion mechanisms operated independently of each other.

27. In the event of either a "Next Equity Financing" or an exercise of Grosz's "Optional Conversion" right, Toptal agreed in Section 2.2(c) to complete a "Company Conversion":

> (c) <u>Company Conversion Prior to Note Conversion</u>. For clarification, the Company agrees to complete a Company Conversion prior to any conversion of the Note pursuant to this Section 2.2.

28. A "Company Conversion" is defined in the NPA as a conversion of Toptal into a C-corporation.

29. The conversion of Toptal from a Delaware limited liability company to a Delaware C-corporation was a necessary element of converting Grosz's Note to equity in Toptal. Employees and other investors in Toptal similarly had rights to equity in Toptal which Du Val expressly conditioned on the conversion of Toptal from a Delaware limited liability company to a Delaware C-corporation but, upon information and belief, Grosz alone negotiated for, and obtained, the right to force Toptal to convert to a C-corporation.

30. Despite Toptal's and Du Val's repeated assurances to Grosz, other investors, and Toptal employees that converting Toptal from a Delaware limited liability company to a Delaware C-corporation was imminent, nearly eight years have passed since Grosz invested in Toptal and no action has been taken. Instead, Toptal has refused to convert in an effort to prohibit investors from acquiring equity in Toptal and to ensure that Du Val maintains 100% ownership and control of Toptal. More than a dozen ex-Toptal employees have told one media outlet in interviews that they feel tricked out of stock in Toptal.

31. The Note that Toptal issued to Grosz pursuant to the NPA references and incorporates the terms of the NPA: "Unless earlier converted into Conversion Shares pursuant to Section 2.2 of that certain Note Purchase Agreement . . . among the Company and the Lender (the "Purchase

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: (415) 743-6900
Fax: (415) 743-6910

Agreement"), the principal and accrued interest shall be due and payable by the Company <u>on demand by the Lender</u> at any time after the Maturity Date." (emphasis added).

32. Thus, unless Toptal completes a Company Conversion and converts the Note into equity of Toptal, the principal and accrued interest on the Note are not "due and payable" by Toptal unless and until Grosz makes a written demand for payment following the Maturity Date of the Note. This was an important feature of the Note because it protected Grosz's right to either: (1) elect to be paid the principal and interest; or (2) convert his investment into equity.

33. The Maturity Date was set by the NPA as May 14, 2014.

34. Grosz has never demanded that TopTal pay the principal and accrued interest under the Note.

35. To ensure that Toptal could not strip Grosz of his rights under the Note, including his "Optional Conversion" right, the Note specifically prohibits Toptal from paying the principal and accrued interest on the Note <u>unless</u> Grosz demands payment or consents to the payment. Specifically, the Note provides: "Prepayment of principal, together with accrued interest, may not be made <u>without the consent of</u> [Grosz]." (emphasis added).

36. Toptal knows that it is prohibited from paying the principal and accrued interest on the Note without Grosz's consent because Du Val has stated publicly that Toptal wants to pay back all of the investor notes, but cannot do so unless an investor asks for his or her money back.

37. Grosz has never demanded payment on the Note and has never consented to Toptal's payment of principal or accrued interest on the Note. Instead, Grosz intends to exercise his "Optional Conversion" right under Section 2.2(b) of the NPA to convert his investment into 8.333% equity in Toptal and, in connection therewith, to force Toptal to convert from a Delaware limited liability company to a Delaware C-corporation pursuant to Section 2.2(c) of the NPA in order to effectuate the conversion of the Note pursuant to Section 2.2(b) of the NPA.

<u>Grosz Enters into Advisor Agreement with Toptal</u>

38. Contemporaneously with the execution of the NPA, Toptal and Grosz entered into an Advisor Agreement. The Advisor Agreement provides that Grosz "will consult and work with and

advise [Toptal] from time to time on matters relating to Company's actual or potential business, technology and products."

39. The Advisor Agreement was highly valuable to Toptal. Grosz has substantial experience assisting startup companies focused on growth and, over the years, has developed highly effective expertise in assisting companies to effectively and sustainably grow their business. In recognition of the value that Grosz provides to companies, Grosz has received up to 5% equity stakes in other companies for his advisory roles, which is substantially higher than typical advisory relationships. These advisory roles have included aggressive performance targets that Grosz has successfully and consistently met and exceeded. Toptal recognized the value that Grosz brought to Toptal and its growth strategy and actively pursued an advisor relationship with Grosz.

40. The Advisor Agreement expressly states that the <u>only</u> consideration for Grosz's services to Toptal is an opportunity for Grosz to purchase additional equity in Toptal when it converts to a Delaware C-corporation:

> As the only consideration due [Grosz] with respect to the subject matter of this Agreement, [Grosz] shall receive the opportunity to purchase (via stock purchase right or a stock option) [Toptal's] Common Stock equal to 1.5% of [Toptal's] fully diluted capitalization (the "Shares") as of the time immediately following the [Toptal's] conversion to a Delaware corporation (the "Conversion"), at a price per share equal to the then fair market value of the Shares as of the date such purchase right or option grant is approved by [Toptal's] Board of Directors (the "Board"), as determined by the Board in good faith.

41. The Advisor Agreement contains a "Solicitation" clause wherein Grosz agreed "that during the term of this Agreement and for one year thereafter, [Grosz] will not encourage or solicit any employee or consultant of [Toptal] to leave (or devote less than his or her full time to) [Toptal] for any reason."

42. In addition, the Advisor Agreement contains a "Proprietary Information/Intellectual Property" clause providing:

> 2. <u>Proprietary Information/Intellectual Property</u>. The business, technical and financial information Advisor obtains from Company or that arise out of the Services constitute "Proprietary Information." Advisor will not disclose or, except in performing the Services, use any Proprietary Information. However, Advisor shall not be so obligated

with respect to information from Company that (i) is or becomes publicly available without restriction through no fault of Advisor, or (ii) that Advisor knew without restriction prior to its disclosure by Company. Upon termination or as otherwise requested by Company, Advisor will promptly provide to Company all items and copies containing or embodying Proprietary Information. Company shall own, and Advisor hereby assigns to Company, all intellectual property rights throughout the world that arise in connection with the Services or that relate to Proprietary Information; further Company will be free to fully use, employ and exercise any other information, works of authorship, technology or inventions Advisor has provided or may provide, and any related intellectual property rights, and to allow others to do so.

43. Grosz has not violated the "Solicitation" clause or the "Proprietary Information/Intellectual Property" clause of the Advisor Agreement.

44. Grosz provided valuable services to Toptal pursuant to the Advisor Agreement.

45. Grosz has never received any compensation, however, because Toptal has refused to convert to a C-corporation and provide him that opportunity.

46. Despite Grosz's compliance with all terms of the Advisor Agreement, Toptal sent to Grosz, on March 26, 2020, a letter stating that Toptal has "reason to believe" that Grosz violated the "Solicitation" and "Proprietary Information/Intellectual Property" provisions of the Advisor Agreement. These allegations are, however, purely conclusory and provide no supporting facts or evidence. A true and correct copy of Toptal's March 26, 2020 letter is attached as **Exhibit A**.

47. In its letter, Toptal purports to unilaterally terminate the Advisor Agreement, including Grosz's opportunity to purchase a 1.5% equity share in Toptal (i.e., the only consideration for Grosz's services under the Advisor Agreement). Upon information and belief, Toptal terminated the Advisor Agreement to prevent Grosz from acquiring equity in Toptal.

### Toptal Breaches NPA and Note By Attempting to Force Repayment

48. Despite having no right to do so under the NPA and Note, Toptal also stated in its March 26, 2020 letter that "Toptal has concluded that this is the appropriate time to terminate its relationship with [Grosz] under the parties' November 14, 2012 Note Purchase Agreement." Toptal demands in the letter that Grosz provide Toptal with wire transfer instructions by the next business day so that Toptal can pay the principal and accrued interest on the Note, and states: "Toptal has prepared a wire transfer to you in the amount of $1,335,936.90, which represents the principal amount

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: (415) 743-6900
Fax: (415) 743-6910

of your $1 million loan to Toptal and accrued 4.0% per annum interest through the end of March, 2020 referenced in the Form of Note."

49. Toptal has breached the terms of the Note and NPA, which expressly prohibit Toptal from paying the principal and interest on the Note without Grosz's consent.

50. Toptal has no right to unilaterally terminate the Note or the NPA.

51. All conditions precedent to the institution and maintenance of this action have been satisfied or waived.

52. Grosz has retained Holland & Knight LLP to prosecute this action and is obligated to pay the firm reasonable attorneys' fees.

## COUNT I – BREACH OF CONTRACT AGAINST TOPTAL
## (NPA AND NOTE)

53. Grosz reallages and incorporates by reference Paragraphs 1 through 52 as if fully set forth herein.

54. Grosz and Toptal entered into the Note and NPA, which are binding contracts.

55. The NPA attaches the Note as an exhibit.

56. The Note references and incorporates the terms of the NPA.

57. Grosz has fully performed his obligations under the NPA and Note.

58. The Note expressly prohibits Toptal from paying the principal and accrued interest on the Note without the consent of Grosz: "Prepayment of principal, together with accrued interest, may not be made without the consent of [Grosz]."

59. Grosz has never demanded payment, and has never consented to Toptal's payment, under the Note. Therefore, the Note is not yet "due and payable," and any attempt by Toptal to pay the Note without Grosz's prior demand or consent breaches the express terms the Note.

60. Grosz intends to exercise his "Optional Conversion" rights in Section 2.2(b) of the NPA.

61. Toptal has breached the Note by attempting to pay Grosz the principal and accrued interest, without his consent, and thereby eliminate Grosz's rights under the Note and NPA, including, but not limited to, his "Optional Conversion" right and his right to force Toptal to convert from a

Delaware limited liability company to a Delaware C-corporation. The conduct of Toptal, as described herein, constitutes a breach of the Note and NPA and interferes with and obstructs Grosz's right to acquire equity in Toptal based on the terms and conditions of the Note and NPA.

62. As a result of Toptal's breaches, Grosz has been damaged in an amount to be determined at trial.

## **COUNT II – DECLARATORY JUDGMENT AGAINST TOPTAL**
## **(NPA AND NOTE)**

63. Grosz reallages and incorporates by reference Paragraphs 1 through 52 as if fully set forth herein.

64. The parties have a dispute regarding their rights and obligations under the Note and NPA. Specifically, Toptal has attempted to repay the principal balance and accrued interest on the Note, which the terms of the Note and NPA expressly prohibit without Grosz's consent.

65. Grosz has never demanded payment, and has never consented to Toptal's payment, under the Note.

66. Grosz intends to exercise his "Optional Conversion" right in Section 2.2(b) of the NPA.

67. Toptal's conduct, as described herein, interferes with and obstructs Grosz's rights to acquire equity in Toptal based on the terms and conditions of the Note and NPA.

68. Grosz seeks a declaration that, under the terms of the Note and NPA, Toptal cannot pay or attempt to pay the principal and accrued interest on the Note without either first receiving a demand or the consent of Grosz.

69. There is a bona fide, actual, present, and practical need for a declaration that Toptal cannot pay or attempt to pay Grosz the principal and accrued interest on the Note without his demand or consent.

70. The declaration requested herein concerns a present or ascertainable set of facts, or present controversy, and Toptal has an actual, present, adverse, and antagonistic interest in the subject matter of the declaration sought herein. A declaration of the rights, duties, and obligations of the

parties is necessary and required in order that Grosz's rights are protected and determined, and to avoid a multiplicity of actions.

## COUNT III – INJUNCTIVE RELIEF AGAINST TOPTAL

## (NPA AND NOTE)

71. Grosz reallages and incorporates by reference Paragraphs 1 through 52 as if fully set forth herein.

72. The conduct described herein constitutes an obstruction of Grosz's right to obtain an equity interest in Toptal pursuant to the Note and NPA and interferes with Grosz's rights to acquire equity in Toptal thereunder.

73. Unless and until enjoined and restrained by order of this Court, Toptal's interference with and obstruction of Grosz's rights will cause irreparable injury to Grosz in that, among other things, (1) Grosz is prevented from receiving, and is withheld, his rightful entitlement to equity in Toptal upon conversion of the Note; (2) Toptal may distribute equity in Toptal that rightfully belongs to Grosz; and (3) Toptal may engage in similar acts and behavior against similarly situated investors, which are believed to have Convertible Promissory Notes similar to Grosz.

74. Grosz has no adequate remedy at law for the injuries caused as a result of Toptal's interference with and obstruction of Grosz's rights.

75. Grosz is likely to succeed on the merits of his claims because the Note and NPA expressly prohibit Toptal from paying the principal and accrued interest on the Note without Grosz's demand or consent, which Grosz has never provided. In addition, the NPA provides Grosz with the unambiguous right to convert his Note into equity in Toptal at any time after April 30, 2014, and to require Toptal to convert from a Delaware limited liability company to a Delaware C-corporation, which Grosz intends to do.

76. The injunction sought herein is in the public interest because, among other things, the public has an interest in seeing that private parties comply with their agreements.

77. The balance of equities or hardships tips in favor of Grosz because, among other things, he has complied with all aspects of the Note and NPA, took on substantial risk investing in

Toptal at its early stages, and has a reasonable and legal expectation to receive the rights and compensation he is due under the Note and NPA.

78. Grosz seeks an injunction enjoining Toptal from paying or attempting to pay the principal and accrued interest on the Note without the consent of Grosz.

## COUNT IV – BREACH OF CONTRACT AGAINST TOPTAL

### (Advisor Agreement)

79. Grosz reallages and incorporates by reference Paragraphs 1 through 52 as if fully set forth herein.

80. Grosz and Toptal entered into the Advisor Agreement, which is a binding contract.

81. The Advisor Agreement required that Grosz "consult and work with and advise [Toptal] from time to time on matters relating to Company's actual or potential business, technology and products."

82. The Advisor Agreement was highly valuable to Toptal.

83. Grosz performed the services under the Advisor Agreement when and as requested by Toptal. For example and not limitation, from time to time and as requested by Toptal, Grosz participated in long advisor sessions with Toptal executives and growth teams, some of them spanning multiple days in duration. These deep sessions typically led to the development of well-conceived and customized plans that Toptal implemented to grow its business.

84. Grosz has not been paid any compensation by Toptal for his services under the Advisor Agreement.

85. The Advisor Agreement provides that the "only consideration" for Grosz for the services provided by Grosz and covenants of Grosz under the Advisor Agreement is the opportunity to purchase (via stock purchase right or a stock option) a 1.5% equity share in Toptal when it converts from a limited liability company to a C-corporation.

86. At all times material hereto, Grosz has complied with all provisions of the Advisor Agreement.

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: (415) 743-6900
Fax: (415) 743-6910

87. Toptal has breached the Advisor Agreement by receiving the extensive benefits of Grosz's work and services, as required under the agreement; terminating the Advisor Agreement; and refusing to provide Grosz with the "only consideration" due to him under the Advisor Agreement.

88. As a result of Toptal's breaches, Grosz has been damaged in an amount to be determined at trial. Toptal has prevented Grosz from purchasing a 1.5% equity share in Toptal. In addition, the valuation of Toptal when the Advisory Agreement was executed was substantially lower than Toptal's valuation today. Toptal's failure to timely convert to a Delaware C-corporation in accordance with its repeated assurances to Grosz caused Grosz to suffer additional damages in the form of the lost appreciation in value of the 1.5% of equity he was entitled to purchase.

## COUNT V – DECLARATORY JUDGMENT AGAINST TOPTAL

### (Advisor Agreement)

89. Grosz reallages and incorporates by reference Paragraphs 1 through 52 as if fully set forth herein.

90. The parties have a dispute regarding their rights and obligations under the Advisor Agreement. Toptal has falsely accused Grosz of violating the "Solicitation" and "Proprietary Information/Intellectual Property" provisions of the Advisor Agreement.

91. Grosz has never violated any provision of the Advisor Agreement and has, at all times material hereto, complied with all provisions of the Advisor Agreement.

92. Grosz seeks a declaration that he has not violated the Advisor Agreement.

93. There is a bona fide, actual, present, and practical need for a declaration that Grosz has not violated the Advisor Agreement.

94. The declaration requested herein concerns a present or ascertainable set of facts, or present controversy, and Toptal has an actual, present, adverse, and antagonistic interest in the subject matter of the declaration sought herein. A declaration of the rights, duties, and obligations of the parties is necessary and required in order that Grosz's rights are protected and determined, and to avoid a multiplicity of actions.

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: (415) 743-6900
Fax: (415) 743-6910

## COUNT VI – FRAUD IN THE INDUCEMENT AGAINST DU VAL

**(Advisor Agreement)**

95. Grosz reallages and incorporates by reference Paragraphs 1 through 52 as if fully set forth herein.

96. In 2012, Du Val personally represented to Grosz among other things:

   a. Toptal would be raising additional capital through a "Next Equity Financing" shortly after Grosz signed the Advisor Agreement;

   b. conversion of Toptal from a Delaware limited liability company to a Delaware C-corporation was imminent;

   c. Grosz would have the ability to purchase a 1.5% share of equity in Toptal soon after execution of the Advisor Agreement, which was the "only consideration" in the Advisor Agreement;

   d. Grosz would be an equity owner in Toptal soon after his execution of the Advisor Agreement.

97. Du Val acted knowingly and with fraudulent intent. Du Val knew that Grosz wanted to purchase a 1.5% share of equity in Toptal shortly after he executed the Advisor Agreement and that this equity was Grosz's "only consideration" under the Advisor Agreement.

98. In fact, on November 7, 2012, Du Val represented to Grosz that Toptal was structuring the Advisor Agreement so that "more vesting happens in the first year" for Grosz. The "vesting" was false since Du Val never intended for Grosz to acquire equity in Toptal.

99. Du Val's representations were intentionally false and designed to lure Grosz into acting as an advisor to Toptal. Du Val never intended for Grosz to obtain equity in Toptal and at all times material hereto intended to keep 100% of the equity of Toptal to himself.

100. Grosz relied upon Du Val's representations and in doing so, signed the Advisor Agreement and performed all duties required of him thereunder.

101. Grosz has been damaged as a direct result of Du Val's false representations. Among other things, Grosz has expended valuable time, energy, and resources in performing his duties under the Advisor Agreement without just compensation due to him.

## COUNT VII – INTENTIONAL INTERFERENCE WITH CONTRACT AGAINST DU VAL

### (Advisor Agreement, Note, and NPA)

102. Grosz reallages and incorporates by reference Paragraphs 1 through 52 as if fully set forth herein.

103. At all times material hereto, Grosz was a party to three valid contracts with Toptal: (a) the Advisor Agreement, (b) the Note, and (c) the NPA.

104. Du Val knew about each of the contracts between Grosz and Toptal.

105. Du Val intended to disrupt the contracts between Grosz and Toptal, and his conduct, as described herein, intentionally interfered with and disrupted Toptal's performance under the contracts and Grosz' ability to obtain ownership of equity in Toptal under the contracts. Among other things, Du Val intentionally and unjustifiably prevented Toptal from converting from a Delaware limited liability company to a Delaware C-corporation, and made efforts to strip Grosz of his rights under the contracts to obtain ownership of equity in Toptal.

106. As a proximate result of Du Val's actions, Grosz has suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Denis Grosz requests entry of a judgment against Defendants for the following:

a) Compensatory damages to be proved at trial, representing, among other things, (i) the value of the equity in Toptal that Grosz is entitled to receive as the "sole consideration" under the Advisor Agreement, plus (ii) the value of 8.333% of the "Fully-Diluted Equity Securities" (as defined in the NPA);

b) Costs of suit, including "Expenses" as defined in Section 8.7 of the NPA;

c) Attorneys' fees pursuant to Section 8.7 of the NPA;

d) Pre- and post-judgment interest at the legal rate;

e) A declaration that, under the terms of the Note and NPA, Toptal cannot pay or attempt to pay the principal and accrued interest on the Note without a demand by or the consent of Grosz;

f) A declaration that Grosz has not breached the Advisor Agreement;

g) An injunction prohibiting Toptal from paying or attempting to pay the principal and accrued interest on the Note without the demand or consent of Grosz; and

h) Any further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Grosz demands a trial by jury on all issues so triable.

DATED: April 2, 2020

Respectfully submitted,

HOLLAND & KNIGHT LLP

By */s/ Ashley L. Shively*
Ashley L. Shively

Attorney for Plaintiff
Denis Grosz

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: (415) 743-6900
Fax: (415) 743-6910

- 17 -   Case No. _____
COMPLAINT FOR DAMAGES AND
INJUNCTIVE AND DECLARATORY RELIEF